UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KEVIN ISOM, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:21-CV-231-HAB |
| | ) |
| RON NEAL, Warden, Indiana State Prison, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner Kevin Isom ("Isom") was sentenced to death for the 2007 killing of his wife and two stepchildren. After exhausting his direct appeals, Isom filed a procedurally deficient petition for post-conviction relief that was dismissed by an Indiana trial court. The dismissal was reviewed by the Indiana Supreme Court. Rather than affirm or reverse the trial court, the Indiana Supreme Court ordered the trial court to "file Isom's tendered petition as of the date of this order," nearly a year after the petition's initial submission. Isom's post-conviction relief petition fared no better than his direct appeals, so he now seeks habeas relief from this Court.

Now before the Court is Isom's Motion for Statutory and/or Equitable Tolling. (ECF No. 6). Isom asks the Court to exclude 319 days, the time from the date Isom's conviction and death sentence became final[1] to the date the Indiana Supreme Court ordered his post-conviction relief petition filed, from the one-year habeas statute of limitations. Respondent objects. Isom's motion has been fully briefed (ECF Nos. 7, 11, 13) and is ready for ruling.

---

[1] The conviction and death sentence became final on February 29, 2016, when the United States Supreme Court denied certiorari. *Isom v. Indiana*, 577 U.S. 1137 (2016).

I.     **Factual and Procedural Background**

On January 12, 2016, Isom timely petitioned for post-conviction relief ("Petition") with the Lake County, Indiana, Superior Court. The Petition was signed by Isom, but it did not include a notarized oath affirming that the Petition stated all known grounds for relief, as required by Indiana Post-Conviction Rule 1, Section 3(b)[2]. The trial court noted the omission and directed Isom to submit the missing oath within three weeks. Isom failed to do so.

Six weeks later, the trial court held a hearing on a verified motion for extension of time to file the oath and a motion to reconsider the trial court's decision to reject the unverified Petition. At this hearing, Isom expressed his desire for new representation. He explained to the trial court:

> Well, as it was explained to me by the attorneys that they made a mistake. They simply forgot to submit the affirmation for my PCR petition. A very basic and fundamental aspect of the petition. Now, if they make that sort of mistake, what sort of mistakes will they make when it becomes more complex? That's my concern.

(ECF No. 8-3 at 256). The trial court sought to assuage Isom's concerns about his counsels' competency, explaining that "many counties in the state actually don't even have a hard line about the petition being signed by the petitioner or authorized." (*Id*. at 257). Even so, she cautioned Isom that "we have time limits here, and you may be in danger of yielding, waiving, giving up, your right to proceed with post-conviction relief." (*Id*. at 258). Isom responded that, while he understood the trial court's warning, he had "no desire to waive [his] post-conviction." (*Id*.). At the end of the hearing, Isom was given fourteen more days to submit the oath.

---

[2] The Rule states, "[t]he petition shall be made under oath and the petitioner shall verify the correctness of the petition, the authenticity of all documents and exhibits attached to the petition, and the fact that he has included every ground for relief under Sec. 1 known to the petitioner."

Four days before the new deadline, Isom filed a motion again asking the trial court to accept the Petition without the oath. The motion was denied, and the case set for another status conference.

More than a month after the extended deadline had passed, the trial court held a status hearing. At the outset, the trial court advised Isom that, if he did not submit the required notarization, the court "would find that [Isom] had forfeited [his] right to pursue post-conviction relief." (ECF No. 8-3 at 107). Isom responded that he had "no desire to waive [his] PCR," but "respectfully decline[d]" to sign the oath. (*Id*. at 107, 108). The reason for Isom's refusal was his desire to be represented by new attorneys. After a brief questioning by counsel, the Court again advised Isom that "[i]f you do not [sign the oath] today, sir, then you are forfeiting your post-conviction relief rights." (*Id*. at 114). Isom responded that he could not continue to work with his current counsel.

What followed was a back and forth between the trial court and Isom about the quality of his representation and his prospects for obtaining new court-appointed counsel. After that discussion, the Court again told Isom, "today's the day you need to decide whether you want to sign that petition." (*Id*. at 118). Again, Isom declined. In response, the trial court found that "there is no petition before the Court." (*Id*. at 119).

At this point Isom's counsel interjected, telling Isom that the "counsel issue might not be decided," suggesting that he might receive new counsel in the future. (*Id*.). Isom responded by stating that he "need[ed] some assurance that if [he] sign [sic] [he] will have new representation." (*Id*. at 120). A ten-minute break was then taken so that Isom could speak with the chief public defender about the prospect of new counsel. Unfortunately, the chief public defender could not be reached during the recess.

> When proceedings reconvened, the trial court stated:
>
> We first met last year. The petition was to have been filed in January; it is now May 2nd. Frankly, I don't know what the Supreme Court is going to think about the fact that this Court has continued it this long. I'm a little concerned. But today is the day. You may, in fact, get new counsel, or you may not, Mr. Isom. But again, that question falls to you. You've said now at least twice that you decline to sign, and you've told us that in other words as well this morning and afternoon.

(*Id*. at 121). The trial court found that there was no petition before it, cancelled the scheduled post-conviction relief hearing, and notified the Supreme Court so that Isom's execution could be scheduled.

Less than two weeks later, Isom sent a letter to the Court stating that he had secured the agreement of a new public defender, Steven Schutte, to represent him. Isom stated in the letter that he wanted "to get started as soon as possible!" (*Id*. at 127). Schutte also filed a verified notice confirming that Isom had agreed to allow Schutte to represent him in the post-conviction relief proceedings. All the same, Isom's original legal team remained counsel of record.

Isom appealed the trial court's refusal to accept his unverified petition directly to the Indiana Supreme Court. Isom asked the Indiana Supreme Court to either "accept the post-conviction petition that Isom tendered in January 2016, or order the post-conviction court to accept the petition as of any date outside the case management schedule." *Isom v. State*, 170 N.E.3d 623, 657 (Ind. 2021). After briefing and oral argument, the Indiana Supreme Court issued a two-paragraph Order on January 3, 2017. The Order stated: "Being duly advised, the Court orders the trial court to file Isom's tendered petition as of the date of this order." (*Id*. at 131). No reasoning was provided.

On remand, Isom was represented by Schutte and another newly appointed attorney. Among the issues they raised was the Indiana Supreme Court's decision to deem the Petition filed in January 2017. The trial court denied relief on all claims and the Indiana Supreme Court affirmed.

*Isom*, supra. The Indiana Supreme Court addressed the filing date issue in its opinion. Rejecting Isom's argument, the Court held: (1) that "nothing in the post-conviction rules permits Isom to collaterally attack an issue of post-conviction procedure that our Court already settled on appeal"; (2) that Isom waived his challenge to the filing date by "specifically requesting the relief he now challenges"; (3) that his argument was barred by the law-of-the-case doctrine; (4) that Isom pointed "to no error in the Court's order and cite[d] no rule that the order violates"; and (5) that Isom waived the issue by failing to properly develop the argument. *Isom*, 170 N.E.3d at 657–68.

## II.    Legal Discussion

Isom's request for tolling arises from the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Relevant here, the AEDPA imposes a one-year statute of limitations that begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

### A.    *Isom's Request for Tolling is Properly Decided*

Before reaching the merits of Isom's request, the Court must first address whether those merits can be reached. Isom has filed a timely habeas petition. Any tolling of the habeas statute of limitations would apply only to a future amendment, an amendment that Isom promises will be forthcoming. Yet because there is no amendment before the Court, Respondent asserts that the request for tolling "is not yet ripe," and that any decision "would only be an advisory opinion that may be applicable in the future if Isom decides to amend his petition." (ECF No. 11 at 5).

By asking the Court to toll the statute of limitations before an untimely amendment is filed, Isom is asking the Court to apply tolling prospectively. This differs from how tolling is generally applied in the habeas context. *United States v. Yarrington*, 838 F. Supp. 2d 832, 834 (C.D. Ill. 2012). This Court recognized as much four months ago. *United States v. Salas*, 1:19-CR-45-HAB,

DKT No. 55 (N.D. Ind. July 19, 2021). There, this Court determined that the defendant could "assert equitable tolling when he files a belated § 2255 petition but cannot seek an extension now." *Id*. at *2 (citing *Mejia v. United States*, 862 F. Supp. 2d 263, 276 (E.D.N.Y. 2012)).

Case law addressing this issue is far from uniform. The Court finds no Seventh Circuit authority addressing whether a habeas deadline can be prospectively tolled. Other circuits have decided the issue, though those decisions provide this Court with little assistance.

**1.**     *The Third, Sixth, and Ninth Circuits*

On one side of the ledger are the Third, Sixth, and Ninth Circuits. Each of these courts, with varying degrees of conviction, have permitted district courts to grant prospective relief to habeas petitioners.

The Third Circuit presents the most extensive analysis of the issue. In *United States v. Thomas*, 713 F.3d 165 (3rd Cir. 2013), the court of appeals reviewed a district court ruling denying a § 2255 petitioner's motion for extension. The court of appeals viewed the issue as one of Article III standing – whether a request for prospective tolling presented a "case or controversy" that could be decided. *Id*. at 168. After reviewing the AEDPA's legislative history, the court of appeals held:

> Accordingly, it is now clear that, while civil in some respects, a § 2255 proceeding is a continuation of the underlying criminal case. It necessarily follows that because a § 2255 motion is a continuation of a defendant's criminal case, a motion for an extension of time to file a § 2255 motion is also a continuation of the underlying criminal case. Thus, a district court has subject matter jurisdiction to rule on a § 2255 motion for an extension of time before the substantive motion for relief is actually filed. The underlying criminal case satisfies Article III's case or controversy mandate.

*Id*. at 173–74 (footnote omitted). *Thomas*, however, notes that Congress gave district courts "broader procedural latitude" in § 2255 cases than in § 2254 cases, casting doubt on the applicability of its rationale to this case. *Id*. at 171.

The Ninth Circuit first addressed the issue in *Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal. (Beeler)*, 128 F.3d 1283 (9th Cir. 1997). There, the court affirmed a six-month prospective extension of the one-year statute of limitations. *See* 28 U.S.C. § 2244(d). California district courts relied on *Beeler* to grant prospective tolling for more than twenty years. *See Brown v. Davis*, 482 F. Supp. 3d 1049, 1056–57 (E.D. Cal. 2020) (collecting cases). Prospective tolling was generally applied in a "stop clock" fashion[3], and ensured that petitioners could use the full year provided by the AEDPA.

Depending on who you ask, the Ninth Circuit either implicitly overruled *Beeler* or left it in place in *Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020) (en banc). In *Smith*, the Ninth Circuit held that unlike statutory tolling for properly filed post-conviction petitions under 28 U.S.C. § 2244(d)(2), equitable tolling does not act as a stop-clock. *Id*. A petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Id*. at 598–99. The Ninth Circuit explicitly rejected the argument that Congress established a one-year-statute of limitations with the intent to provide petitioners with 365 impediment-free days to draft and file a petition. *Id*. at 591–92.

Because *Smith* did not directly address *Beeler*, district courts in the circuit are divided over whether prospective tolling is permitted. *Cf. Fitzgerald*, 2020 WL 3414700, at *5; *Dunn v. Baca*, 2020 WL 2525772, *3 (D. Nev. May 18, 2020). For its part, the Court would note that both *Smith* and *Beeler* address the issue in a less-than-direct fashion. *Beeler* did affirm a decision to grant

---

[3] "Stop-clock" tolling is the granting of a motion for equitable tolling to extend the limitations period for the exact duration of the impediment. For example, if counsel is not appointed for 60 days following the initiation of habeas proceedings, a court that performs stop-clock tolling would extend the limitations period for 60 days regardless of any showing of diligence after counsel is appointed or counsel's ability to timely petition without tolling. *Fitzgerald v. Shinn*, 2020 WL 3414700, at *3 (D. Ariz. June 22, 2020).

7

prospective tolling but did so with little discussion of whether prospective rather than retrospective tolling was appropriate. Prospective tolling wasn't even an issue in *Smith*; the petitioner there requested tolling after filing a belated petition. Ninth Circuit authority, then, does little to aid the Court's analysis.

Sixth Circuit precedent is more direct. In *Hargrove v. Brigano*, 300 F.3d 717 (6th Cir. 2002), the petitioner filed his § 2254 petition without first appealing to the Ohio Supreme Court. The district court dismissed the petition without prejudice and tolled the statute of limitations on the condition that the petitioner pursue his state appeal within thirty days and return to federal court thirty days after the state appeal. The respondent appealed, arguing that this was an "advisory opinion because it addresses issues not properly before the court." *Id*. at 718. The Sixth Circuit concluded that the district court's decision was "reasonable," stating that it achieved the same result as a stay. *Id*. at 721.

The Sixth Circuit seemingly limited the holding of *Hargrove* in *Carter v. Bradshaw*, 644 F.3d 329 (6th Cir. 2011), *reversed on other grounds Ryan v. Gonzales*, 568 U.S. 57 (2013). There, the district court prospectively tolled the AEDPA statute of limitations indefinitely until the petitioner was competent to proceed. The Sixth Circuit reversed, noting the significant difference between the thirty-day window in *Hargrove* and the indefinite tolling in *Carter*. *Id*. at 334–35. The court of appeals directed that the habeas proceeding be stayed pending a determination of competency.

The Sixth Circuit provides the Court with more direction than the Third or Ninth, but only incrementally. The Sixth Circuit precedent seems to suggest that a finite period of tolling, more than thirty days but less than forever, is appropriate to address procedural issues with a petition.

8

Whether the Sixth Circuit would authorize tolling for nearly a year, as requested by Isom, is unclear.

**2.**     *The Second and Fifth Circuits*

Reaching the opposite conclusion are the Second and Fifth Circuits. In short opinions, both circuits concluded that, until a petition is filed, no case or controversy exists. Federal courts, then, lack jurisdiction to consider a request for prospective tolling. *See United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000); *United States v. McFarland*, 125 Fed.Appx. 573, at *1 (5th Cir. 2005). In these circuits, Isom's request would be a non-starter.

**3.**     *A Ruling on Isom's Request of Tolling is not an Advisory Opinion*

After reviewing the relevant authorities, the Court finds that ruling on Isom's request for prospective tolling does not violate Article III. The Seventh Circuit has stated that an advisory opinion is "a legal declaration that *could not* affect anyone's rights." *Fenton v. Bank of America, N.A.*, 877 F.3d 714, 716 (7th Cir. 2017) (emphasis added). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test. Basically, the question in each case is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wis. Environ. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410–11 (7th Cir. 1984) (citations omitted).

The issuance of advisory opinions raises two concerns, neither of which applies here. First "is a desire to conserve judicial time and effort by avoiding unnecessary adjudication." *People of Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 942 (7th Cir. 1983). The Court accepts Isom's representation that a ruling on tolling will be necessary at some point. Isom states that he "will file an amended pleading," citing several areas where the current petition will need

supplementation. Isom notes that all his mental health experts have identified the need for further evaluation. He also identifies several categories of records that counsel has not collected as well as several witnesses that have not been interviewed. The Court agrees with Isom that his "request for tolling is based on far more than a 'mere speculation about the possibility' he will amend" his petition. (ECF No. 13 at 2).

The Court also believes that ruling on the tolling issue now will conserve, rather than waste, judicial resources. If the Court declines to rule on tolling, the next step would be to order Respondent to file a response to the protective petition. 28 U.S.C. § 2243. This will be no small task for Respondent – the petition is 170 pages. Following a reply by Petitioner, the Court would then have to review hundreds of pages of briefing and begin drafting an opinion. All this effort would be mooted if Petitioner later filed an amendment within a later-determined tolling period. The Court sees no purpose in tasking its staff, the State of Indiana, or Petitioner's counsel with legal busy work.

Second is the "familiar concern that an advisory opinion might be ill-informed and unreliable because the factual record on which it was based was incomplete or hypothetical." *Barra*, 704 F.2d at 942. This concern does not apply to Isom. The record as it relates to tolling is complete. The relevant events took place in 2016 and 2017. Nothing will, or can, be added to the procedural and factual history that would alter the Court's analysis.

Even more, the Court finds that a ruling on tolling will affect Petitioner's amendment rights. If tolling is granted, Petitioner will have free rein to add claims to his petition. Not so if tolling is denied. Then, Petitioner would have to rely on Federal Rule of Civil Procedure 15(c), which permits amendments to relate back to the date of the original filing if the original and amended pleadings arise out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P.

10

15(c)(2). While the Seventh Circuit once liberally allowed relation back of amendments so long as they referred to the same trial and conviction, *see Ellzey v. United States*, 324 F.3d 521, 525–27 (7th Cir. 2003), the United States Supreme Court has limited amendments to claims arising out of a "common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A ruling on tolling, then, affects whether Petitioner can raise claims outside the facts stated in the protective petition.

"It is an elementary maxim of our legal system that a court decides only the case before it, and can not render advisory opinions disposing of other issues not presented for decision." *Matter of Chicago, Rock Island and Pac. R. Co.*, 772 F.2d 299, 303 (7th Cir. 1985). Petitioner's entitlement to tolling is crucial to the resolution of this case, has been presented for decision, and can be decided upon a finalized set of facts. The Court rejects an Article III barrier on the record before it.

**B.**     *Isom is not Entitled to Equitable Tolling*

Isom seeks to toll the AEDPA statute of limitation on two grounds. The first is equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). It is the petitioner's burden to establish both points. *See Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). The realm of equitable tolling is a "highly fact-dependent area" in which courts are expected to employ "flexible standards on a case-by-case basis." *Socha v. Pollard*, 621 F.3d 667, 672 (7th Cir. 2010). That said, tolling is rare; it is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing."

*Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004) (internal quotation marks and alterations omitted).

The Court finds that Isom has failed to show either element required for equitable tolling. Isom argues that there is "no question that [he] diligently pursued post-conviction review," noting that the Petition was timely. (ECF No. 7 at 8). He also argues that his later refusal to sign the Petition was not "motivated by a desire to delay proceedings," but was due to his lack of trust in his appointed counsel. (*Id.*). The Court concedes both points, but Isom cannot escape the fact that the 319-day delay in his post-conviction proceeding was because of his willful, repeated refusal to sign the Petition.

The diligence prong of the *Holland* test "covers those affairs within a litigant's control." *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 257 (2016). There were many things outside of Isom's control related to the Petition, including who would represent him, whether the trial court would accept the unverified Petition, and the outcome of his appeal. But he alone controlled whether he put pen to paper. Isom, then, created the delay and cannot exploit equitable tolling to wipe it away. Indeed, the requirement that a petitioner exercise diligence "makes little sense if equitable tolling were available when a litigant was responsible for [his] *own* delay." *Id*. at 256–57 (original emphasis).

Nor does the Court find any extraordinary circumstance that caused the delay. Isom first argues that the delay was caused by counsel's incompetence. Perhaps, but a "garden variety claim of attorney negligence" is not an extraordinary circumstance. *Holland*, 560 U.S. at 652; *Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010). Despite Isom's attempts to rebrand his attorneys' oversight as a violation of canons of professional responsibility, the Court finds nothing more here

than garden variety attorney negligence. This is not, and has never been, enough to support a claim for equitable tolling. *See Modrowski v. Mote*, 322 F.3d 965, 968–69 (7th Cir. 2003).

Isom next faults the trial court, stating that it made "several statements to petitioner that led him to believe he could defer signing the oath until he had secured new counsel." (ECF No. 7 at 10). This argument is simply not supported by the record. Isom notes that he was told, at the first status conference, that the requirement for the oath was not universally enforced across the state. Still, the trial court then cautioned Isom that "we have time limits here, and you may be in danger of yielding, waiving, giving up, your right to proceed with post-conviction relief." (ECF No. 8-3 at 258). Isom further notes that, at the second conference, the trial court described the oath as a "formality." But the Court also warned Isom three times that he would forfeit his post-conviction rights if he did not sign the Petition that day. (*Id*. at 107, 114, 118). The Court also issued several orders directing Isom to file the Petition with the oath. Taken as a whole, there was nothing misleading or ambiguous about the trial court's statements or actions. Instead, the judge regularly, and consistently, advised Isom that his failure to sign the oath would cause the forfeiture of his post-conviction rights. No reasonable person would have understood anything else. *Cf. Ross v. Varano*, 712 F.3d 784, 801 (3rd Cir. 2013) (trial court erroneously advised petitioner that his appeal was being prosecuted).

Finally, Isom argues that his "mental health issues" support equitable tolling, because his conditions "curtail his ability to trust others and cause him to withdraw under stressful circumstances."[4] The Court recognizes that mental illness can be a basis for equitable tolling, but

---

[4] The Court will have to take Isom's word for his mental health issues. His memorandum cites "TT 13546; PTC2 35–36, 48, 81" as evidence (ECF No. 7 at 11), but the Court has no idea where it would find this evidence. The Court understands "TT" to mean trial transcript – the trial transcript has not been provided. "PTC2" is not defined anywhere the Court can find, either in the memorandum or Isom's protective petition. (*See id.* at 2, n.1; ECF No. 8 at 7). Going forward, the Court would ask the parties to cite pages as they are filed — if evidence is located on page one of Exhibit A to a filing, the citation should be to Exhibit A, p. 1. Citation to pages of portions of exhibits is unhelpful and creates unnecessary work for the Court.

"only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Mayberry v. Dittman*, 904 F.3d 525, 530 (7th Cir. 2018). This is a high burden; the Seventh Circuit has rarely identified an individual with sufficient mental illness to support tolling. *See id.* (request for tolling denied despite petitioner having been found incompetent to stand trial). Relevant here, the Seventh Circuit has expressly rejected the idea that a "general inability to cope with matters legal" can support tolling. *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014).

Isom has submitted no evidence showing that he could not understand his legal rights or act on them.[5] He has not even argued that his mental limitations rose to this level. Instead, at best, the evidence and argument show that his limitations made him difficult to work with and left him unable to cope with aspects of his legal predicament. The Court does not doubt that Isom faces struggles with his mental health, but it does reject the idea that those struggles support equitable tolling.

Even though the Court rejects each of Isom's "extraordinary circumstances" individually, it is mindful that it must consider "the entire hand" he was dealt. The Court must consider all the circumstances he faced "and the cumulative effect of those circumstances" to determine whether they were sufficiently extraordinary to prevent the timely prosecution of the post-conviction proceedings. *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014). Isom was not dealt a royal flush, but his cards were good enough to stay in the game. External forces may have made Isom's post-conviction proceedings incrementally tougher, but he bears the ultimate responsibility for the nearly one-year delay. No mistake by counsel, or statement by the trial court, or mental health

---

[5] Isom talks out of both sides of his mouth on this issue. He claims his mental illnesses were so severe as to support tolling, but he also takes credit for suggesting steps to resolve the impasse with his counsel. (ECF No. 13 at 7). He also notes his repeated statements that he wished to preserve his post-conviction rights. It is clear to the Court that Isom understood the proceedings and made the decisions that led to the current procedural morass.

challenge played a role as significant as Isom's choice not to verify the Petition. Taken as a whole, then, the Court finds that the obstacles identified by Isom do not cumulatively amount to extraordinary circumstances that would support equitable tolling.

C. *The Court Cannot Determine the Issue of Statutory Tolling Given the Ambiguity in the Indiana Supreme Court's Order*

The AEDPA's one-year statute of limitations is not absolute. Instead, under the statute, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." 28 U.S.C. § 2244(d)(2). The parties dispute rests on the interpretation two phrases in this passage: "properly filed" and "pending." Statutory tolling is permitted only if the Petition was both properly filed and pending during the disputed 319 days. *Artuz v. Bennett*, 531 U.S. 4, 9 (2000). The parties agree that the interpretation of "properly filed" is governed by state law. *See Allen v. Siebert*, 552 U.S. 3, 7 (2007). The parties similarly agree that the interpretation of "pending" is governed by federal law. *See Carey v. Saffold*, 536 U.S. 214, 220–21 (2002); *but see Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002) ("The issue of whether a post-conviction petition is pending for habeas purposes is governed by state law.").

As a matter of federal law, the Petition was "pending" as of the date it was submitted to the trial court, verification or no. *Artuz* illustrates this conclusion. Explaining that even a deficient petition can be pending, the Supreme Court stated:

> If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending*, but not *properly filed*.

*Artuz*, 531 U.S. at 9 (original emphasis). Once the clerk of the trial court accepted the Petition for filing, it was then "pending" regardless of any defect. The Petition continued to pend "until [the

15

Petition] achieved final resolution through the State's post-conviction procedures." *Carey*, 536 U.S. at 220. This much is clear.

The "properly filed" issue is far less clear. Indiana has promulgated rules for the post-conviction relief process. A person seeking post-conviction relief "must file a verified petition with the clerk of the court in which the conviction took place." Ind. Post-Conviction Rule 1, Section 2. Among other requirements, the petition "shall be made under oath and the petitioner shall verify the correctness of the petition, the authenticity of all documents and exhibits attached to the petition, and the fact that he has included every ground for relief . . . known to the petitioner. *Id*. at Section 3(b). The plain language of the rule, requiring a verification no less than three times, is strong evidence that the Petition was not "properly filed" when it was submitted to the trial court.

Caselaw interpreting the verification requirement is less clear. Contrary to Respondent's argument, the verification requirement is not jurisdictional. *Brown v. State*, 458 N.E.2d 245, 248–49 (Ind. Cr. App. 1983). It is, instead, a claims processing rule that can be waived if no objection is raised. *Id*. at 249 (collecting cases). A trial court can adjudicate the merits of an unverified petition. *Barnes v. State*, 496 N.E.2d 816, 817 (Ind. Ct. App. 1986). The consequence for not requiring the verification is that the petitioner is not barred from raising a different ground for relief in a subsequent petition. *Id*.

Just because a trial court can adjudicate the merits of an unverified petition does not mean it should. The Indiana Court of Appeals has repeatedly advised trial courts that the proper procedure is to "return the petition for compliance with the verification requirements." *Id*.; *Barfield v. State*, 399 N.E.2d 377, 380 (Ind. Ct. App. 1979). This process "eliminates both multiplicity of petitions and appeals from the original petition based on the issue of whether the verification requirements were satisfied." *Barfield*, 399 N.E.2d at 380.

In Isom's case, the trial court followed the Court of Appeals' directions. It quickly noted the lack of verification and gave Isom a deadline to comply with the verification requirement. The trial court *could* have ruled on the Petition's merits, but relied on the Petition's procedural deficiency to reject it. More evidence that the Petition was not "properly filed."

But what is the Court to make of the Indiana Supreme Court's Order? The parties offer two competing interpretations. Isom, noting that the Petition was never verified, argues that "by reinstating Mr. Isom's petition, the state high court necessarily determined that the *initial petition* had been properly filed." (ECF No. 7 at 6) (original emphasis). Respondent, on the other hand, asserts that "the only reasonable interpretation of the Indiana Supreme Court's order is that on January 13, 2017, the Court decided to accept a defective petition and commence post-conviction proceedings in an effort to remove the impasse." (ECF No. 11 at 6). The Court finds merit in both positions.

The ambiguity arises not because of what the Indiana Supreme Court said, but what it did not say. Appellate decisions generally end in one of two ways: the ruling of the court below is either affirmed or reversed. In this way, the appellate court tells the parties, the court below, and readers whether it agrees or disagrees with the ruling on review. Here, the Indiana Supreme Court did neither, giving interested parties no indication as to the propriety of the trial court's determination. This allows both parties to offer plausible interpretations of the Indiana Supreme Court's order.

Had the Indiana Supreme Court affirmed or reversed the trial court, this Court's task would be easy. If the trial court had been affirmed, Isom would not have received a determination on the merits of his post-conviction relief claims. *See Corcoran v. State*, 827 N.E.2d 542, 545 (Ind. 2005). In that case, this Court would have little trouble concluding that the Petition had not been "properly

17

filed." On the other hand, if the trial court had been reversed, the Petition would have been rendered "properly filed" by the after-the-fact blessing of the state's high court. *Fernandez v. Sternes*, 227 F.3d 977, 978 (7th Cir. 2000).

If the Court were forced to decide, it would find that Respondent's interpretation of the Indiana Supreme Court's order is correct. Based on the plain language of the post-conviction relief rules, the trial court's proper rejection of the Petition, and the Indiana Supreme Court's directive that the Petition be filed as of the date of its order, the Court sees little reason to believe that the Petition was "properly filed" under Indiana law. Based on the record before it, the Court would find that the Petition was not "properly filed" until January 13, 2017.

That said, the Court is loath to play mind reader in a capital case. The Indiana Supreme Court had an intention when it issued its order and four of the five Justices that sat on the court in January 2017 remain there today. Those Justices can, presumably, help explain the intent behind their order. In addition, as the final arbiters of Indiana law, the Indiana Supreme Court can say definitively whether the Petition was properly filed when it was tendered to the trial court. If this determination is to be made, the Indiana Supreme Court should make it.

Indiana Appellate Rule 64 states that a district court "may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling precedent." Whether the Petition was "properly filed" falls into this category. If there is "clear controlling precedent," it is in an ambiguous order that only the Indiana Supreme Court can properly interpret. The Indiana Supreme Court's ruling would be determinative, as the "properly filed" issue is the only remaining factor in the only remaining basis for tolling. Given all this, the Court will certify the question to the Indiana Supreme Court.

The Justices of the Indiana Supreme Court may reformulate this question if they feel that course is appropriate. Nothing in this certification is intended to limit the scope of their inquiry.

### III. Conclusion

For these reasons, the Court CERTIFIES the following questions to the Indiana Supreme Court: "Is a petition for post-conviction relief, tendered to a trial court without the verification required by Post-Conviction Rule 1, Sections 2 and 3, properly filed? If not, does a later order of the Indiana Supreme Court, which neither affirms nor reverses a trial court order dismissing an unverified petition but orders the petition filed by the trial court as of the date of the Supreme Court's order, render the unverified petition properly filed as of the date of its initial submission?" Under Ind. App. R. 64(B), the Clerk is ORDERED to provide the Indiana Supreme Court with copies of: (1) this Opinion and Order; (2) the docket in this case, including the names of the parties and their counsel; and (3) the parties' briefs on the motion for tolling (ECF Nos. 6, 7, 11, 13).

SO ORDERED on December 2, 2021.

        s/ *Holly A. Brady*
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT